**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

v.                                                Case No: 8:13-cv-2723-T-30TGW

ST. JOSEPH'S HOSPITAL, INC.,

    Defendant.

_____

**<u>ORDER</u>**

This cause comes before the Court on Defendant St. Joseph's Hospital's Motion for Summary Judgment (Dkt. #80), Plaintiff United States Equal Employment Opportunity Commission's Memorandum in Opposition (Dkt. # 108), Plaintiff's Motion for Summary Judgment (Dkt. # 99), and Defendant's Memorandum in Opposition (Dkt. #103). Upon review and consideration, it is the Court's conclusion that each Motion should be granted in part.

*Background*

The United States Equal Employment Opportunity Commission ("EEOC") filed a complaint on behalf of Charging Party Leokadia Bryk ("Bryk") against St. Joseph's Hospital (the "Hospital") alleging violations of the Americans with Disabilities Act, as

1

amended, 42 U.S.C. S 12101, *et seq.*, ("ADA") when it failed to provide Bryk with a reasonable accommodation.

Bryk was employed by the Hospital in its Behavioral Health Unit ("BHU") from January 2, 1990, until November 21, 2011. Bryk worked at the Hospital as a nurse in the psychiatric unit. On October 17, 2011, the Hospital demoted Bryk from a Clinical Nurse III ("CN III") position to a Clinical Nurse II ("CN II") due to her admission to an accreditation surveyor that she allowed patients to sleep in the hallway during staff shortages. As a CN III, Bryk's responsibilities included supervising other nurses in the unit. She spent a significant amount of time behind a desk. After her demotion to a CN II, her responsibilities included significantly more interaction with patients requiring more time in the hallways and patient rooms.

The BHU is an in-patient psychiatric unit for patients who meet Florida's Baker Act criteria, meaning that the patient presents an imminent danger to the patient or to others. The BHU was divided into three units, a pediatric unit, a progressive unit, and an intensive unit. The progressive unit, where Bryk was employed, housed the patients that were "less violent" than the ones in the intensive unit.

Bryk underwent hip replacement surgery in August 2009. She began to use a cane, and returned to work in October 2009, as a CN III. In October 2011, after Bryk was demoted, Susan Wright, the Director of Behavioral Health Operations, began supervising Bryk. She observed Bryk using a cane in the psychiatric patient care areas. Wright instructed her to complete a Work Clearance Form (the "Form") from a health care provider and submit it to the Employee Health Department. On October 18, 2011, Bryk returned the Form

completed by her primary care physician, Dr. Bhat. The Form stated that Bryk needed the cane on a permanent basis to assist her with a "gait dysfunction" due to her hip replacement. The Form also indicated that she had the additional restriction of working only eight to sixteen hours a day for five days a week. Dr. Bhat did not indicate any other restrictions on the Form.

Based on the patient population with whom Bryk worked, the Hospital determined that it was unsafe for Bryk to use the cane in the BHU because it posed a risk of harm to Bryk, other employees and the patients. Specifically, a patient could use the cane as a weapon. On October 21, 2011, the Hospital notified Bryk that because it could not accommodate her request for cane use in the BHU she had until November 21, 2011, to obtain another position or else she would be terminated. At the time, Bryk had a two-week vacation scheduled which she did not cancel. During that time, she explored open positions on the internet, but did not apply to any positions until she returned from her vacation.

To qualify for certain posted positions, Bryk had to be employed for at least six months in her current position and must have had no warnings in her personnel file. Bryk had not held the CN II position for six months and had a "Final Written Warning" in her file. Therefore, Bryk did not qualify for a transfer. However, the Hospital made an exception to its policy and permitted Bryk to apply for another position. Further, the Manager of Team Member Relations, Krista Molnar Sikes, assisted Bryk in her job search by reaching out to recruiters[1] and moving her applications through the hiring process. On

---

[1] A recruiter is an in-house employee who assists hiring managers by screening applicants including reviewing applications and conducting initial interviews.

the last day of her deadline, Sikes reached out to Bryk about any pending applications and reached out to recruiters on Bryk's behalf. Bryk applied to seven nursing positions. The Hospital did not hire her for another position, and her employment ended on November 21, 2011.

*Discussion*

### I. Legal Standard

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the Court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that

there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248–49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**II.   The Cross Motions for Summary Judgment**

The EEOC moves for summary judgment arguing that Bryk had a disability in the form of stenosis which significantly impaired her ability to walk. Although Bryk did not identify stenosis or spondylosis as the basis of her disability at any time while she worked at the Hospital, the EEOC now asserts that those conditions necessitated Bryk's use of the cane at work.  She used the cane for almost two years within the BHU and walked with a visible limp. Both actions put the Hospital on notice of her need to have an accommodation. The EEOC contends her use of the cane is a reasonable accommodation since she used a wrist strap, there was a locked room in which she could secure the cane if the need arose, and she was thoroughly trained in safety measures when dealing with psychiatric patients.

Therefore, the cane did not pose a significant risk of substantial harm to the health or safety of the patients or employees.

The EEOC further argues that she was able to perform all of her work duties while using the cane and never had an incident where a patient attempted to grab her cane. In the three years prior to Bryk's termination, no incident in the BHU involved items taken from the nurses. Bryk's use of the cane did not expose patients to any more risk of harm than mops, brooms, pens, food trays, walkers and razors, all of which the Hospital allowed in the BHU. The employer must determine whether an accommodation constitutes a significant risk based on an individualized assessment and objective evidence and not speculation or generalization. The Hospital never analyzed Bryk's actual cane to determine its material and weight, which would allow a specific determination that a lightweight cane attached to her wrist posed no significant risk. Further, Bryk qualified for and applied to three positions, yet the Hospital did not reassign her to any of those positions. Therefore, the EEOC argues that the Hospital failed in its duty to provide a reasonable accommodation to a disabled employee.

The Hospital argues that it is entitled to summary judgment because Bryk never informed the Hospital of her stenosis, and therefore it cannot be the underlying disability from which she can claim a failure to accommodate. Further, Bryk does not have a disability because her gait dysfunction does not qualify as a physical impairment that substantially limits one or more of her major life activities. Even if she can establish a disability, she has not proven that she requested an accommodation since her act of limping

6

and using the cane is insufficient to put the Hospital on notice of a disability and need for an accommodation.

Further, argues the Hospital, even if Bryk could establish that she had a disability and that she requested an accommodation, she fails to show how her requested accommodation is reasonable given the safety risk the cane poses in the BHU. In the Eleventh Circuit, the safety risk analysis is part of the plaintiff's burden to prove that the accommodation is reasonable. As to the reassignment, Bryk did not get another vacant position in the Hospital because she applied for positions for which she was not qualified or that were not filled due to budgetary or other reasons.

### III. Title I Disability Claim under the ADA

The Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 (hereinafter "ADA") prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a). Under the ADA, discrimination includes the failure to make "reasonable accommodations to the known physical ... limitations of an otherwise qualified individual with a disability who is an ... employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A) (2009). The burden-shifting analysis of Title VII employment-discrimination claims applies to ADA claims. *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).

To establish a prima facie case of discrimination under the ADA, the EEOC must show that Bryk (1) has, had, or was perceived to have, a "disability"; (2) was a "qualified"

7

individual ("meaning [s]he could perform the essential functions of the job in question with or without reasonable accommodations"); and (3) was discriminated against because of her disability. *Williams v. Motorola, Inc.,* 303 F.3d 1284, 1290 (11th Cir. 2002); *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).

### a. Disability

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1215–16 (11th Cir. 2004). After Bryk had the hip replacement in 2009, her orthopedic surgeon returned her to full duty without any physical restrictions. However, Bryk began using a cane to assist her with walking and for pain relief.

Bryk's primary physician indicated in the Form that she had a "gait dysfunction" due to her hip replacement. The hip replacement along with Bryk's obesity caused her to walk with a severe limp, and created a risk of falling, both of which were diminished by using the cane. The cane also relieved the pressure on the replaced hip and provided pain relief. Therefore, Dr. Bhat completed the Form based on his conversation with Bryk regarding her need for the cane, his personal observations, and his general knowledge regarding gait dysfunction with obese individuals who have hip replacements. Further, Bryk herself testified that she had great difficulty walking, had to stop every 100 feet or so to rebalance herself and relive her pain. The EEOC does not rely on this diagnosis as the basis for Bryk's disability analysis in its Motion.

Instead, it argues that Bryk has stenosis and spondylosis which symptomatically date back to 2006. After Bryk completed her operation and the healing phase it was uncovered that her lumbar spinal stenosis contributed to her pain according to the EEOC's medical expert, Dr. Merritt. At no time did Bryk notify the Hospital's management that her stenosis and spondylosis was the reason she needed a cane. As a result the Hospital argues that she may not use it as a basis for her disability determination nor her request for an accommodation. Further, the Hospital argues that Dr. Merritt's report does not meet the standards for expert testimony as required by *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 113 S.Ct. 2786 (1993) because it is neither relevant nor reliable.

The Court concludes that Bryk's "gait dysfunction" identified by Dr. Bhat is sufficient to establish that Bryk was a disabled person at the time of her termination. *See Harty v. City of Sanford*, 26 A.D. Cases 1207 (M.D. Fla. 2012) (noting that "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, ... the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.") (quoting Pub.L. No. 110–325, § 2(a)(6), 122 Stat. at 3553.5). Therefore, all issues related to the stenosis diagnosis are moot.

### b. Qualified Individual

The term "qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position.... 42 U.S.C. § 12111(8) (2009). The Court should consider "the employer's judgment as to what functions of a job are essential, and if an

9

employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id*; *see also D'Angelo v. ConAgra Foods, Inc*., 422 F.3d 1220, 1225 (11th Cir. 2005).

The ADA does not require the employer to eliminate an essential function of a job. *D'Angelo,* 422 F.3d at 1229. However, "the ADA may require an employer to restructure a particular job by altering or eliminating some of its marginal functions." *Lucas*, 257 F.3d at 1260. "[E]ssential job functions 'are the fundamental job duties of a position that an individual with a disability is actually required to perform.' " *Holly*, 492 F.3d 1247 (quoting *Earl v. Mervyns, Inc*., 207 F.3d 1361, 1365 (11th Cir. 2000)). "Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors." *D'Angelo*, 422 F.3d at 1230. The Eleventh Circuit accords an employer's view substantial weight but it is not dispositive. *D'Angelo*, 422 F.3d at 1233.

### c. Essential Functions

It is undisputed that performing her duties in a safe manner and generally keeping the patients safe is an essential function of Bryk's position as a CN II nurse. However, the EEOC contends "takedowns" and emergency "codes" are not essential functions of the CN II position. A takedown involves restraining a patient who is acting violently, and may include the administration of medication. An emergency code involves injecting patients with medication who are ill or acting dangerously. Nurses are involved in both situations, and they are responsible for providing medication, documenting the incident, or alerting doctors as appropriate. Some nurses routinely performed the physical restraint portion of a takedown.

The EEOC argues that orderlies or stronger male employees would first restrain the patient before a nurse would administer medication, and nurses infrequently restrained the patients. Therefore, these functions are not essential for a CN II. The Court disagrees. The CN II position required Bryk to participate in resolving and documenting a takedown or emergency code situation as they arose in the BHU.

The evidence shows that CN II nurses had to be prepared to engage a patient in all situations, even if they arose infrequently or others typically performed the physical restraint. If the orderlies or male nurses were not available, the CN II present would have to engage the patient to maintain the safety of all involved. Therefore, takedowns and emergency codes are essential functions of a CN II nurse. *See Cremeens v. City of Montgomery, Ala.*, 427 Fed. App'x. 855, 858 (11th Cir. 2011) (holding that although a fire investigator had to engage in fire suppression activities infrequently, it was an essential function of the job because fire investigators have a responsibility to suppress fires when fire suppression units were not on the scene and lives were in danger; "[i]ndeed, the firefighting function is essential whenever the need arises, and the consequences of not requiring a [f]ire [i]nvestigator to engage in fire suppression activities when necessary could be dire.")

### d. Reasonable Accommodation

The EEOC contends that the Hospital had two options to accommodate Bryk's disability: permit her to use a lightweight cane with a wrist strap in the BHU or reassign her to a vacant position outside of the BHU. It failed to do either and therefore violated the ADA. The Hospital argues that the use of the cane, regardless of its weight, material, or

11

whether it had a strap, was an unreasonable accommodation because it could not be used safely within the BHU. Further, Bryk did not apply for any position for which she qualified or that remained available after her application.

### i. Cane Use in the BHU

The EEOC argues that the Hospital did not meet its obligation to engage in an individualized assessment of Bryk's ability to use the cane safely within the BHU, including reviewing Bryk's extensive safety training and experience, the lightweight nature of the cane, the wrist strap, and the likelihood of the cane being used as a weapon. It based its evidence on subjective assumptions regarding the general risks associated with a cane.

As evidence that the cane is a reasonable accommodation, the EEOC points to the following: Bryk used the cane for two years without incident; the Hospital permits patients to use canes with a doctor's approval, the Hospital admitted that there could be a mitigating measure; no incident in the three years prior to Bryk's termination involved an item taken from a staff member; and the Hospital permitted comparably more dangerous items within the BHU, including razors, brooms, mops, and walkers.

The Hospital argues that the EEOC has not met its burden to show that Bryk could perform her essential functions safely while using a cane. In the Eleventh Circuit, the employee retains at all times the burden of persuading the jury either that she was not a direct threat or that reasonable accommodations were available. *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 448 (11th Cir. 1996). Other circuits have also adopted this approach in limited circumstances. *See EEOC v. Amego, Inc.*, 110 F.3d 135, 144 (1st Cir. 1997) ("Where [plaintiff's] essential job functions necessarily implicate the safety of

others, plaintiff must demonstrate that she can perform those functions in a way that does not endanger others. There may be other cases under Title I where the issue of direct threat is not tied to the issue of essential job functions but is purely a matter of defense, on which the defendant would bear the burden."); *Borgialli v. Thunder Basin Coal Co.*, 235 F.3d 1284, 1295 (10th Cir. 2000) ("Plaintiff was not a 'qualified person' to work in a position as a blaster because the defendants rightly considered that he was a direct threat to others in the work place.").

The EEOC has not demonstrated that Bryk could use the cane safely in the BHU. It admitted at oral argument that given her age and size, she was a likely target in the event a patient wanted to use her cane as a weapon. To the extent that the EEOC argues she could lock up her cane in a secure room in the event of a takedown or emergency code, it is clear to the Court that given her admitted difficulty walking, particularly without the cane, her ability to respond quickly and safely is severely compromised. The Hospital does not have an obligation to eliminate or reallocate an essential job function to accommodate a disabled employee. *See Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997). To the extent that the EEOC argues Bryk's prior use of the cane demonstrates the reasonableness of the accommodation, the Court rejects that argument. *See Wood v. Green*, 323 F. 3d 1309, 1314 (11th Cir. 2003) ("prior accommodations do not make an accommodation reasonable.")

In response to the policy permitting canes for patients in the BHU, the Hospital points out that if the need arises, the Hospital analyzes it on a case by case basis to determine the safest way to accommodate the patient. In any event, there is no evidence

13

that any patient ever used a cane in the BHU. Further, Bryk's primary physician, who once worked at the Hospital and has worked in many other psychiatric units, stated in his deposition that "you have to understand, she's on a psychiatric floor and using the cane, someone could assault you with that cane as a weapon." He further stated that "[o]n a psych floor, the rule is you cannot have a cane or stick or something the patient can grab." The ADA does not require employers to take unnecessary risks when dealing with a disabled employee in an inherently dangerous job. *See Borgialli*, 235 F.3d at 1295,

Even if Bryk's mitigating measures, i.e. using a lightweight cane with a wrist strap, and locking her cane in the medicine closet when the need arose, were sufficient to show that she could perform her essential functions safely, the Hospital has demonstrated that the cane imposes an undue burden. Specifically, the Hospital asserted the only way a patient could use a cane in the BHU was if the patient were put on a "1:1 arm's length" supervision whereby a staff member would be only an arm's length away from the patient at all times to protect the patient and others from harm. A nurse could not be put on that same restriction, since there are insufficient staff members to do so. Bryk acknowledged in her own deposition, that there were occasions where there were staff shortages in the BHU. *See E.E.O.C. v. Amego, Inc.*, 110 F.3d 135, 148 (1st Cir. 1997) (affirming summary judgment for employer where one of the accommodations created an undue hardship because it disrupted the employer's "crucial one-staff-member-to-two-clients ratio, or result in the need for an additional [employee].")

The Court concludes that Bryk has not demonstrated that the use of a cane within the BHU was a reasonable accommodation under these circumstances. The

14

unpredictability of the patients behavior in the BHU, Bryk's admitted inability to walk even short distances, her severely compromised ability to participate in a "takedown" or emergency "code" and the particular realities of working within a psychiatric unit where the Hospital requires all nurses to be able to respond to any situation that may arise, are all factors in the Court's determination. *See Holbrook*, 112 F.3d at 1528 n. 4 (holding that vision impaired detective's request for re-allocation of essential job duties not reasonable under the particular realities associated with police work). The undisputed facts demonstrate that no reasonable juror could find that Bryk could use her cane safely in the BHU.

### ii.  Reassignment to a Vacant Position

Reassignment to a vacant position may also serve as a reasonable accommodation to a disabled employee. *See* 42 U.S.C. § 12111(9)(b) (2009). *See also Lucas*, 257 F.3d at 1255-56 ("the ADA may require the employer to 'reassign,' i.e., transfer, the disabled employee to a vacant position as a reasonable accommodation."). This duty to reassign does not include removing another employee from a position or promoting the disabled employee. *Id*. Reassignment to a new position is required as a reasonable accommodation only if there is an available, vacant position. *See Willis v. Conopco, Inc*., 108 F.3d 282, 284 (11th Cir. 1997) ( "[r]eassignment to another position is a required accommodation only if there is a vacant position available for which the employee is otherwise qualified."). *See also Mattingly v. Univ. of S. Florida Bd. of Trustees,* 931 F. Supp. 2d 1176, 1185 (M.D. Fla. 2013) ("[r]eassignment to a vacant position in a company is one in a range of reasonable accommodations which must be considered and, if appropriate, offered if the

employee is unable to perform his current job.").

Bryk applied to seven positions, three of which are at issue. The Hospital argues that Bryk applied to positions for which she was not qualified, that would have been a promotion or that were never filled due to reasons unrelated to Bryk. Therefore, she did not request a reasonable accommodation. The EEOC maintains that Bryk's forty years of experience as a nurse qualified her for all three of these positions and they were vacant at the time of her application, therefore they all constituted a reasonable accommodation. The Court must determine the essential functions of these jobs and whether Bryk could perform those functions. If an employer prepared a written job description then it shall be considered evidence of the essential functions of the job. *Lucas*, 257 F. 3d at 1258.

### 1. Education Specialist- Staff Development/Education

Bryk applied for this position on November 14, 2011. The recruiter reviewed her application, determined that she met the minimum qualifications for the position, and sent her application to the hiring manager, Pamela Wayne, for review. The Hospital maintains that Bryk was not minimally qualified for the position and lacked the relevant skills, aptitude and experience including medical and surgical experience. However, the job description contained all the qualifications for the job and did not mention "medical" or "surgical" experience. Further, the hiring manager stated a preference for someone with "acute care, medical health nursing experience" which she described as caring for patients with shorter-duration conditions requiring hospitalization.

The EEOC argues that in the forty years Bryk worked as a nurse she demonstrated experience in those areas when she assisted in diagnosing and treating patients with a

16

variety of acute non-psychiatric conditions. Bryk also had experience with curriculum design for an anger management class, which she also taught at a drug rehabilitation treatment center and two semesters teaching a basic health class. Although Bryk herself admitted that she would need additional training to "get up to speed" with the newer procedures in medical and surgical care, this position involves training other nurses as opposed to providing direct care to patients.  The hiring manager's preferences are not equivalent to essential functions of a position. The hiring manager admitted that the written job description was accurate and contained all of the qualifications for the position. She did not review Bryk's application, did not interview Bryk and relied on the recruiter's statement that Bryk only had a "psychiatric background." The Court concludes that this is an issue for the jury.

### 2.  Care Transition Coordinator

Bryk applied on November 21, 2011. This position involved working with Baycare Home Care to assist in the transition of patients from hospitals to their homes for continued medical care.  Bryk was not interviewed for this position.  However, the Hospital interviewed another candidate for the position months after Bryk applied and it remained open for six months after her application. The position was not filled and the Hospital ultimately determined that it did not have the financial resources to continue the position.

The EEOC argues that since the position was vacant and existing at the time Bryk applied, and the Hospital does not dispute that she qualified for the position, it has met its burden to show a reasonable accommodation existed.  The hiring manager, Constance

Rinehart[2], indicated that if a qualified person applied during the application period, he or she would have been hired. However, she had no record of Bryk's application. The Hospital offers no explanation as to why Bryk was not interviewed for this position. The Court concludes that this is an issue for the jury.

### 3. Health Educator-Community Health

Bryk applied for this position after her termination on December 17, 2011. The position was posted on December 6, 2011, and was ultimately filled on February 23, 2012. The Court concludes that the request to be reassigned to this position was unreasonable as a matter of law since Bryk applied after her termination. *See Scott-Bolton v. Alabama Bd. of Pardons & Paroles*, 47 NDLR P 11 2013 WL 1282344 (N.D. Ala. Mar. 25, 2013) *aff'd sub nom. Scott-Bolton v. Alabama Bd. of Pardons & Paroles*, 551 Fed. App'x. 537 (11th Cir. 2014) (even if employee was qualified for the position, employer not required to hire disabled employee to fill it if the position did not exist during the term of his employment). *See also Skotnicki v. Bd. of Trustees of the Univ. of Alabama*, 23 Wage & Hour Cas. 2d (BNA) 432 n. 8, 2014 WL 3891973 at *12 (N.D. Ala. 2014) (finding employee's request for accommodation in the form of reassignment unreasonable when plaintiff applied for numerous positions after termination).

### Conclusion

The Court concludes that the EEOC has presented sufficient evidence to demonstrate that Bryk was a disabled employee who requested an accommodation. Bryk's

---

[2] Ms. Rinehart was not the hiring manager for this position at the time Bryk submitted her application.

request to use a cane within the BHU was not a reasonable accommodation as a matter of law. The undisputed facts demonstrate that Bryk has not met her burden to demonstrate that she could use the cane safely within the BHU.  However, a jury issue exists as to whether Bryk's reassignment to the Education Specialist or Care Transition Coordinator positions would have been a reasonable accommodation.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant St. Joseph's Hospital's Motion for Summary Judgment (Dkt. #80) is GRANTED in part as stated herein.

2. EEOC's Motion for Summary Judgment (Dkt. # 99) is GRANTED in part as stated herein.

**DONE** and **ORDERED** in Tampa, Florida, this 18th day of February, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to</u>:
Counsel/Parties of Record

S:\Odd\2013\13-cv-2723 msj 80 99.docx